## YELVERTON v. LOUISIANA CENTRAL LUMBER CO. et al.

### No. 4773.

Court of Appeal of Louisiana.
Second Circuit.

June 4, 1934.

See, also, 19 La. App. 21, 138 So. 684.

Cas Moss, of Winnfield, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellees.

MILLS, Judge.

This suit as originally brought demanded 400 weeks compensation for permanent impairment of the use of a foot injured by the fall endwise upon it of a cross-tie.

The trial judge being of the opinion that plaintiff had failed to prove his injury, but that if afforded an opportunity to introduce further evidence, he might do so, dismissed his action as of nonsuit.

Recognizing the liberal attitude of courts towards this character of cases and in view of the conflict in the medical testimony, this court (19 La. App. 21, 138 So. 684) upon appeal affirmed the judgment of the lower court.

The suit brought anew, but claiming 175 weeks compensation, presents the same hopeless contradictions in the testimony of the medical and X-ray experts. There are also unreasonable features in the lay testimony cogently commented upon in the carefully written opinion of the trial judge, who had the advantage of hearing and observing the witnesses. So exactly and ably does this opinion express our views of the case that we quote it and adopt it as our own:

"This suit was tried, originally, before Judge F. E. Jones, who rendered a decision of nonsuit. The case was appealed to the circuit court where this decision was sustained and the case returned. A new suit was then filed and this suit went to trial before me.

"The original record was introduced in evidence and additional testimony was then taken on behalf of both sides. I have examined the entire record, read all the testimony in the case, read the opinion of the circuit court, and have reached the following conclusions:

"The circuit court in effect passed upon all the testimony in the first case and accordingly entered à nonsuit. After considering this evidence, I may say in passing that I agree with the opinion originally handed down by Judge Jones and also that of the circuit court. If I did not so agree with the circuit court, I would have to yield to their views, but, as stated, I find no fault with these decisions.

"The new evidence, taken in connec-

tion with all the testimony in the case, is to be my guide in arriving at my conclusions. The burden is on the plaintiff to make out his case with reasonable, legal certainty. I have carefully gone over and weighed all the testimony. This case presents only one question, and that is whether or not the plaintiff has recovered from the original injury he suffered, or had so recovered when he was discharged as cured by the physicians handling the case. This injury presented definite evidence at the time, and compensation was paid for some weeks. The evidence at the time was external, accompanied by pain and swelling. It did not appear from the X-rays that any bones were broken. Dr. Rand found what, at the time, he thought might be a fracture. He later decided that it was not such. At any rate, the X-rays, according to all the testimony, do not, at this time, indicate any injury to the bony structure of the foot not free from dispute among the doctors. It is contended by Dr. Mosley and Dr. Wright for plaintiff that a certain fracture is now visible at the point of the injury in the form of a nitch. This is denied by the experts for the defendant. They say that this apparent defect is nothing more nor less than a shadow due to the angle in which the picture was made. I am not an expert and have to rely in the main upon the interpretation placed upon the pictures by the doctors. I must say, however, that to the lay mind the pictures do not present evidence of any marked injury to any part of the bone of the foot.

"When all the evidence is carefully considered, it is apparent to the court that to hold with the plaintiff the decision would have to be based entirely upon the evidence within the control of the plaintiff in the case. We have no visible aid, at least after we consider the expert evidence pro and con, from the pictures. I say this because if we give due credence to the experts for both sides, any positive assertion made by plaintiff's doctors is as positively negatived by those of the defendant. In fact, the preponderance of this expert testimony is favorable to the viewpoint of the defendant. I have as high a regard for the doctors on the one hand as for those on the other. Dr. Mosley to some extent confused his testimony in the last trial with that in the former, and Dr. Wright gave it as his opinion that the X-ray did show some signs of injury, but, as stated, this view was repudiated by the experts for defendant.

"It does seem unusual that no further damage was done to the bones by the falling tie and that, notwithstanding this fact, the injury in a subjective form should continue for this length of time. It is claimed that the plaintiff walks on the side of his foot all the time now. In this connection it is singular that the shoes he wore at the time of the trial did not show any evidence of irregular wear. The soles of the shoes were evenly worn all across the bottom. The shoes were new it seems, and it was suggested that the shoes worn by defendant (plaintiff) at the former trial were also new. If the defendant was compelled to turn his foot sidewise, it would seem, according to the testimony, that there would appear an uneven wear if the shoes were worn for any length of time. It also would seem that the sole of the foot would show callous or thickening or corns, if you will, to some extent on the side of the foot bearing the major burden of the weight. This fact is mentioned, not as conclusive, but as a link in the evidence that to some extent at least has bearing. This is especially true since it so happens that the evidence of injury has boiled itself down almost wholly to that testimony within the control of the plaintiff, and against which the defendant is greatly handicapped at offsetting.

"It is a delicate question for a court to be called upon to decide this kind of a case. It could be that the flat-foot from which the plaintiff is suffering could to some extent account for his foot trouble. I do not know as to this. The court does not like to be called upon to assert that the plaintiff is deliberately falsifying in his complaint. At the same time, when one brings oneself before the court as plaintiff in a suit, the burden rests upon one to discharge this burden of proof and make out the case with that reasonable certainty that would justify a judgment. If this is not required in lawsuits, I know of no limit to which employers might not be subjected to compensation claims. If one may by simply complaining of pain subject the employer to compensation and if no definite physical basis can be found as its source, and if pain is entirely a subjective symptom, and not susceptible of demonstration to determine its presence or its absence, then there could be no safeguard from that character of cases, and industry would at once be burdened with a load that could not be borne.

"I am constrained therefore to deny liability in this case on the ground that the case has not been made out with sufficient legal certainty.

"Wiley R. Jones,
"Judge Eighth District Court."

The judgment appealed from is affirmed.